## JOSHUA JONES v. JOSEPH WAPLES.

Court of Common Pleas. Sussex. April, 1802.

*Rodney's Notes.*

*Horsey, Cooper* [for plaintiff]. *Wilson, Vandyke* [for defendant].

*Mr. Cooper* read the petition of Joshua Jones, owner of a mill on Swan Creek for fifty years past. First, you are to inquire whether Joshua Jones is the owner. Second, if the dam above is not so injurious as to require it to be pulled down; if not, what damages plaintiff has sustained.

February, 1703. Deed from Richard Ward to John Lacey for four hundred acres purchased from Richard Clark for land on east side Swan Creek and north of P. river.

February, 1726. Deed from Robert, the son of John Lacey, to William Burton for four hundred acres as above.

April, 1744, probably 1745. Will of William Burton to his son, John Burton, the mill and 150 acres on Swan Creek.

1750. Will of John Burton to his daughter Sarah, mill and land. Sarah Burton intermarried with Joshua Morris, who left issue, etc. Order of Orphans' Court to divide, to Catherine one-third of mill, to Joshua Jones, aforesaid of Morris Reming, two-thirds of the mill and stream (order rejected).

November, 1795. Petition of Joshua Jones, administrator of John Morris, for the sale of lands of deceased. Order granted.

J., 1796. Order to sell lands sold to Joshua Ingram June 3, 1796, return to November, 1796 confirmed.

June 11, 1796. Deed from Jones and wife to Joshua Ingram offered in evidence before confirmation.

Objections to deed from defendant's counsel. 1 Del.Laws 293.

*Mr. Cooper.* The deed having been made, the sale afterwards confirmed by the court, cures the defect.

*Horsey.* The Court will not consider this deed in the same strict light as if this were in ejectment. The confirmation is to have relation back to the sale and deed.

PER CURIAM. We do not consider this deed as competent evidence in this cause.

August 9, 1802. Deed from Catherine Morris to Joshua Jones for one-third of the bill above mentioned.

*Horsey.* Distinction between ejectment and this action.

Not admitted by Court to go to jury.

June 11, 1796. Deed from Joshua Ingram to Joshua Jones for two-thirds.

Jacob Morris, sworn. Have known the mill 23 or 24 years. Joshua Morris owned her. John Morris [was in] possession after. I built Waples's mill above her in the Fall, 1796; it [was] between a half a mile and three-quarters. It is a short stream about two miles long from Jones up. Jones' mill was worth much more before than now.

Cross-examined. I built the mill for Zadok Barker. Jehu Barker came into possession after, held one or two year, then Joseph Waples. Joshua Morris was my uncle.

John McCracken. I knew the mill fifty years ago, belonged to the heir of John Burton, Sarah. About 1762 or 1763 Joshua Morris had possession, was called the old mill 53 years ago. The stream was four or five mile to the head.

Simon Kollock, Esq., sworn. The deed from Ingram was executed some time after the date, can't tell how long, I wrote them.

John Jones, brother to Joshua. In 1799 I kept Jones' mill. After the new mill was erected I found great difficulty in regulating the water. The dam was broke twice while I kept her nine or ten months. She was broke twice in that time, breaches were sixty or seventy feet. Waples has told me the mill was built across Jones's Pond, and put there through envy. He looked upon it, one mill would be worth more than both. Water was ten feet deep in the breach. Has been in possession since 1793. No notice sent of letting the water down. Heard Captain Waples say if he'd summon George Collins and give him some grog, etc.

Benjamin Benston. Have known this mill since 1774. She would have rented for £25, not above half as much now.

William Burton (Turner or Pinkerton). Have known the old mill 45 years. Thirteen years ago she was worth 150 corn a year. We raised seven feet water at the pier. It was one foot higher than I ever saw it before, twenty inches in all. Had plenty of water before. Would not give £100 for her now. Have made 360 bushels tall corn beside wheat and rye one year. Has been considered a condemned stream half a mile from dam to dam.

Endless Morris. Waples said he'd keep his water and perish Jones'. Was carried away mill house and forty feet of the dam in first of the Summer, 1801. Helped to mend her in August.

William Burton. Have known the mill 45 years. She has been broke three times in forty years. Heard Waples say when he came to help mend the dam, said it was cruel we helped to settle Jones' mill, settled her as low as we could.

Jehu Barker. In 1800 Jones' mill blew up. I was at sea, saw it after was done, dam was carried away. In 1799 saw a trench across the dam, pond was not fuller than common. Waples' gates were hoisted, I saw them just before water was run off. Cut was six inches deep. Saw it after eight in the morning. The dam of my mill was carried away two or three hours in the night. I had lowered the water before night. It was cut another time in the night. I saw someone at work. They run. I run after them and fell in the ditch they had cut. The timber in Jones' Pond near Waples' is not yet killed, and the timber is killed in Waples' above the dam.

Henry Massey. Where the new dam was made, the water was moving down.

Zachariah Carey. I knew a spring between the two mills, used to overflow sometimes, does overflow a little more since the new dam.

Burton Prettyman. In Christmas, 1800, was going over Jones' dam two or three hours in the night. Saw a trench cut in it, went up and told him, went over Waples' soon after his gates were up.

*Wilson* for defendant. The petitioners have failed in proving title out of Proprietary. Second, in proving we were the erectors, they having proved Zadok Barker the erector and maker. Third, they have failed in their chain of title. Joshua Jones' title under the Orphans' Court is incomplete. From all which we request the court to direct the jury that the plaintiffs have in proving their title to sustain this action.

The Court were of opinion that the probate should include the whole claim of the plaintiff; therefore this probate and account is insufficient.

*Mr. Cooper.* We have produced deeds near a hundred years, therefore presumption arises that grant has been made. 2 Bl. Comm. 196. Second, we have shown a deed from Joshua Ingram to plaintiff for two-thirds of this mill, he having been the purchaser under Orphans' Court. Therefore, hope we shall have an opportunity of the benefit of our evidence before the jury.

*Robinson.* The Act does not require the action to be brought against the erector alone. This construction would be unreasonable. The declaration of defendant admits us to be the owners, and a grant from the Proprietor may be presumed.

*Horsey.* In ejectment defendant is in possession. No person can divest him but by showing a better title, therefore more strictness required. In the case of *Burton and Prettyman,* plaintiffs incepted their title by survey, only, being upwards of a hundred years old, court decided jury might presume a grant. Wash. 24. A bill of sale for Negroes offered. No parol evidence can be given to content. Court [said] it is not in all cases to be admitted, but in this case it is admitted, etc. The deed from Ingram to Jones in date anterior to the sale, Collander Kollock says were not executed for a considerable time after.

*Vandyke.* First, petitioner has not shown the title out of the Proprietary. The case of *Prettyman and Burton,* survey produced and jury presumed a grant. Second, we are not the erectors or makers. Catherine became entitled to one-third, therefore tenants in common and must join in this action.

PER CURIAM. The Court are not altogether satisfied with the insufficiency of the plaintiff's title to sustain this proceeding. You will therefore proceed before the jury.

*Mr. Wilson* before the jury.

May 2, 1800. Jehu Barker and wife to Joseph Waples. Consideration £67.

Benjamin Prettyman. Have known the mill thirty years. From Jones' mill up four miles communicates with some large savannahs, 260 acres between the two mills on east side. Green timber about a hundred perches down from new dam. I have seen in Fall, 1800, Jones' water raised eighteen inches on Walker's floor, never saw it up to Walker's going over before the new dam was built. I have heard many reckon the new mill an advantage to the neighborhood, are both tub mills, Waples's mill days are Monday, Wednesday, Friday.

Sarah Townsend. Have known the [mill] fifty years. I never knew or heard of the water being raised on Walker's going over. Jones' pond was never so high as since he raised his pond.

Cannon Prettyman.

William Burton, Senior. Never saw the pond up to Walker's going over. Joshua Jones told me that he raised his dam to drown out Waples.

William Harp. I lived near the mill when she broke. He was left on the other side. Went round over Waples' mill, he said

Walker's gates were down, and the water as high as usual. [It] was last spring, was a year.

George Collins. I never knew Jones' mill to pond within 150 yards of Waples, raised the dam and set his new mill three feet higher.

The cause was submitted to the jury after going through the evidence. Jury retired about 12 o'clock at night, came down about six Sunday morning, and found for plaintiff Jones with $5 damages.